**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Thomas P. Gaffney**<br>2313 Washington Avenue, Chevy<br>Chase, Maryland 20815<br><br>    *Plaintiff*<br><br>v.<br><br>**The DMP Group, LLC**<br>5600 Colorado Avenue, NW,<br>Washington, DC 20011 | Civil Action No: _____<br><br><br>   **COMPLAINT FOR BREACH OF<br>CONTRACT, ACCOUNTING MALPRACTICE<br>AND NEGLIGENT MISREPRESENTATION** |

<u>**NATURE OF THE ACTION**</u>

Thomas P. Gaffney brings this action against The DMP Group, LLC ("DMP"), a certified public accounting and management consulting firm, to complain of DMP's breach of contract, accounting malpractice, and negligent misrepresentation.

<u>**PARTIES TO THE ACTION**</u>

1.    <u>Thomas P. Gaffney</u> is a resident of the State of Maryland who resides at 2313 Washington Avenue, Chevy Chase, Maryland 20815.

2.    <u>The DMP Group, LLC</u> is a Washington, DC-based certified public accounting firm, DC Registration L10565.

## JURISDICTION AND VENUE

3.    Subject matter jurisdiction in this matter is proper as there is complete diversity of citizenship between the parties and the controversy exceeds $75,000.

4.    The United States District Court for the District of Columbia has personal jurisdiction over the parties as the Professional Services Contract (hereinafter the "Agreement") giving rise to this dispute states "The validity, construction, scope and performance of this Agreement shall be governed by the laws of the District of Columbia, and shall be brought in appropriate courts within the District of Columbia." The Agreement, Section 10.0. Thus the parties have purposefully availed themselves of jurisdiction within the District of Columbia. Further, DMP is a business organized and maintained under the laws of the District of Columbia.

5.    Venue is proper as DMP is located in the District of Columbia.

## ALLEGATIONS

6.    On or about June 27, 2007, Thomas P. Gaffney and DMP entered into the Agreement.

7.    The Agreement identifies Thomas P. Gaffney as DMP's client.

8.    Under Section 1.0 of the Agreement, "Scope of
Agreement," DMP stated that it would "perform accounting
services as requested by the Client related to the Estate
of Frances Cary.  These services include, but are not
limited to, identifying and tracking receipts of the Estate
of Frances Cary since inception of the Estate to present (a
period of approximately 7 years)."

9.    Under Section 8.0 of the Agreement, DMP pledged that
"All Client matter must be treated confidentially in all
respects."

10.  Section 10.0 of the Agreement states, "This Agreement
constitutes the entire understanding and agreement of and
between the parties with respect to the subject matter
thereof, and supersedes all prior representations and
agreements, verbal or written.  It shall not be varied,
except by an instrument in writing of subsequent date, duly
executed by an authorized representative of each party."

11.  Notwithstanding Thomas P. Gaffney's repeated requests
to meet with DMP in conjunction with its accounting
services, and notwithstanding the fact that Thomas P.
Gaffney is DMP's client, DMP has not made any effort to
communicate with Mr. Gaffney regarding the audit of the
Frances E. Cary Estate.

12.  Not withstanding the fact that Thomas P. Gaffney is its client, DMP has not made any effort to communicate Mr. Gaffney regarding its contract for services with respect to the audit of the Estate of Frances E. Cary.

13.  Instead of communicating with Mr. Gaffney, DMP has engaged in persistent and continuous communications with the Office of the Auditor Master of the District of Columbia (hereinafter, the "Auditor Master").

14.  The Auditor Master is investigating allegations that Thomas P. Gaffney breached his fiduciary duty by wrongfully making disbursements from the Estate of Frances E. Cary (*In Re: Frances E. Cary*, 1997 INT 164, DC Superior Court, Probate Division).

15.  On July 10, 1997, DMP sent to the Auditor Master of the District of Columbia a document entitled "The Estate of Frances E. Cary: An Accounting of Financial Activity, April 1, 1997 to February 28, 2004" which was dated July 5, 2007. The document identifies Thomas P. Gaffney as DMP's client.

16.  Thomas P. Gaffney did not receive a copy of the report prior to the report being provided to the Auditor Master.

17.  DMP represented this report to be a final report when in fact the document was a draft document that contained inaccurate and misleading statements.

18.  On July 27, 2007, DMP delivered another document to the Auditor Master also entitled "The Estate of Frances E. Cary: An Accounting of Financial Activity, April 1, 1997 to February 28, 2004" and also dated July 5, 2007 (the "Final Report").  This document contained many of the same inaccuracies that were included in the version that was provided to the Auditor Master on July 10, 2007. By way of example and not limitation, the Final Report stated that "due to numerous errors and irregularities found in the Accountings filed by Mr. Gaffney, we were unable to rely on those reports."  (The reference was to Five Accountings regarding the estate of Frances E. Cary filed by Thomas P. Gaffney as the Conservator of that estate and accepted by the DC Superior Court).  Yet, the Final Report did not contain a single example of how any of the five accountings were deficient.

19.  This, and other statements, was made without DMP ever communicating with Mr. Gaffney or seeking clarification on the five accountings or attempting to obtain any information from Thomas P. Gaffney that might have enhanced the reliability of these accountings in the eyes of DMP.

## COUNT I
Breach of Contract

20.  Thomas P. Gaffney incorporates the allegations of Paragraphs 1 through 19 into the allegations of Count II.

21.  As counterparty to a contract with Thomas P. Gaffney, DMP owes to him a duty of good faith and fair dealing.

22.  DMP has failed to act in good faith and with fairness toward Thomas P. Gaffney and, as a consequence of its failures, has breached its contract with him. Specifically, DMP has failed to communicate at all with Mr. Gaffney concerning its progress (or lack thereof) in providing its audit services, its preliminary findings, issues needing clarification by Mr. Gaffney, or issues related to the five accountings that were filed by Thomas P. Gaffney and accepted by the DC Superior Court.

23.  Unilaterally, and without the consent of Thomas P. Gaffney or a modification of the Agreement, DMP dramatically modified Section 1.0 of the Agreement to include certain accounting services demanded by The Auditor Master of the District of Columbia.

24.  DMP also breached the confidentiality provisions of Section 8.0 by providing sensitive and confidential information to The Office of the Auditor Master, including (but not limited to) preliminary findings that Mr. Gaffney

had not adequately accounted for funds with respect to the
Estate of Frances E. Cary.

25.  As a consequence of DMP's disregard of its contract
with Thomas P. Gaffney, Mr. Gaffney has suffered damage by
having confidential information released to the Auditor
Master where no attempt was made to adhere to the
confidentiality provisions of the Agreement.

**COUNT II**
Accounting Malpractice/Negligence

26.  Thomas P. Gaffney incorporates the allegations of
Paragraphs 1 through 25 into the allegations of Count III.

27.  In the performance of its duties as a certified public
accounting firm, DMP is expected to observe a standard of
care for those auditing accounts.

28.  DMP failed to meet that standard of care through (by
way of example and not limitation) failing to perform its
audit function in a timely manner; failing to communicate
at all with its client Thomas P. Gaffney; failing to make
adequate inquiry into facts that would be relied upon by
those to whom the audit report would be provided; allowing
interference in the collection of its data, unjustifiably
relying on biased sources of information in the collection
of information about audited accounts; failing to
adequately and accurately collect information and

investigate what it represented in the audit as unaccounted
for funds; representing, as the Final Report a document
that was merely a draft, communicating directly and
exclusively with The Auditor Master with the knowledge that
the Auditor Master was investigating allegations of wrong-
doing by Thomas P. Gaffney.

29.  As a result of DMP's failure to meet its standard of
care, Thomas P. Gaffney has been damaged in that a faulty
audit report has been provided to The Office of the Auditor
Master for the District of Columbia.

**COUNT III**
Negligent Misrepresentation

30.  Thomas P. Gaffney incorporates the allegations of
Paragraph 1 through 29 into the allegations of Count I.

31.  DMP, in the course of its accounting business, has
supplied information about the accounting for the Frances
E. Cary estate with reckless disregard for the truth.

32.  DMP intends for the Auditor Master to rely on this
information.

33.  As a result of DMP's negligent representation of
information, damage has been inflicted upon Thomas P.
Gaffney as a result of the influence that this false
information will have on the Auditor Master.

## PRAYER FOR RELIEF

34.    WHEREFORE, Thomas P. Gaffney respectfully requests
that the Court (1) enter judgment and award damages against
DMP for injuries suffered as a result of DMP's breach of
contract in an amount subject to proof at the time of
trial, and (2) enter judgment and award damages against DMP
for injuries suffered as a result of DMP's accounting
malpractice in an amount subject to proof at the time of
trial, 3) enter judgment and award damages against DMP for
injuries suffered as a result of DMP's negligent
misrepresentation in an amount subject to proof at the time
of trial; 4) enjoin DMP from causing others to rely on the
DMP work product; and 5) employ whatever equitable relief
is necessary to limit the continuing harm to Thomas P.
Gaffney.

## JURY DEMAND

Thomas P. Gaffney requests a jury trial on the
allegations enumerated above.

Respectfully submitted,

_____
Joseph A. Hennessey, Esq.
Newman McIntosh & Hennessey, LLP
7315 Wisconsin Avenue, Suite 700 East
Bethesda, MD  20814
DC Bar No. 453582
(301) 654-3400

GAFFNEY v. DMP, Page 9 of 9

# PROFESSIONAL SERVICES AGREEMENT

This Agreement is executed between The DMP Group, LLC (hereinafter referred to as "DMP") with offices located at 5600 Colorado Avenue, NW, Washington, DC 20011 and St. Paul Mercury Insurance Company, Western Surety, and Thomas P. Gaffney. St. Paul, Western Surety, and Thomas P. Gaffney hereinafter will be referred to collectively as "the Client". DMP and the Client hereinafter will be referred to collectively as "the Parties".

This Agreement sets forth the terms and conditions under which DMP will provide certain services to the Client. The terms and conditions of this Agreement are effective as of June 13, 2005 and beyond until terminated by either party, and relates exclusively to the performance of services rendered in connection with the Estate of Frances Cary.

The Parties agree as follows:

## 1.0 Scope of Agreement

DMP agrees to perform accounting services as requested by the Client related to the Estate of Frances Cary. These services include, but are not limited to, identifying and tracking receipts of the Estate of Frances Cary since inception of the Estate to present (a period of approximately 7 years).

## 2.0 Scope Limitations

DMP agrees that it shall complete all work requested by the Client on or before the deadline specified by the Client, provided such deadline provides DMP with a reasonable amount of time within which to complete the work based upon the accepted practice within the accounting industry. Such representation does not apply in cases where matters outside of the control of DMP (i.e., the Client's failure to provide necessary information, governmental agency processing delays, etc.) prevents DMP from completing the work within the time period requested by the Client.

## 3.0 Price and Payment

**3.1**     Fees for services will be billed on an hourly basis. The agreed upon rates for this engagement are as follows:

| | |
|---|---|
| Partner-in-Charge | $125 per hour |
| Senior Accountant | $85 per hour |

**3.2**    Unilateral rate increases will not be honored.

**3.3**    The parties will not pay for:

    a.   Preparing invoices;

    b.   Secretarial work/administrative time/word processing;

    c.   Review or Organization of the file, not to include initial review and
organization    of all documents by DMP necessary for the provision of
services.  DMP considers the initial review of all documents and other
information contained in the pre-existing file as billable time.

    d.   Reviewing or analyzing conflicts of interest.

The Client considers the foregoing items to be a part of DMP's overhead rate
which is contemplated in the hourly fee.

**3.4**    The Client will pay actual costs for expenses (without "premiums" or
"markups").  All bills must contain a summary of charges for each expense
totaled by category.  The Client will only reimburse:  photocopying at actual
cost (not to exceed $.10/page-bills must indicate number of pages and per
page rate); reasonable travel expenses including coach airfare, hotel, car
rental, etc.; actual long distance telephone; outgoing faxes at actual long
distance telephone usage.

The Client will not pay:  case management systems; unreasonable use of
overnight services; processing third party invoices, travel time (unless work
is performed en route).

**3.5**    The Client will not pay for:  duplication caused by the firm's staffing
requirements; routine intra-office conferencing or memoranda.

**3.6**    A detailed budget should be delivered to the Client within 15 days of request,
if required.

**3.7**    Each bill should contain the following information:

    a.   Case or matter name;

    b.   The billing period involved;

    c.   The firm's address and FEIN number;

    d.   A <u>detailed</u> description of each task performed in single-activity time
entries, including the date it was performed and who performed it, their
rate, the time expended and charged for each task (generic descriptions
such as "attention to case" or "work on file" are not acceptable) and

    e.   Billing in .1 hour increments.

**3.8**    The Client may require the DMP Group to provide proof of insurance coverage under a general liability, professional errors and assignment, or some other instrument. If such is required, the DMP Group shall submit a copy of the required policy coverage naming the Client as an additional insured, where applicable.

**3.9**    DMP will invoice the Client monthly, no later than the 10th day of each month.. Payment of invoices will be made within 30 days of receipt. In the event that a portion(s) of any invoice is unacceptable or disputed by the Client, only the portion(s) in dispute will go unpaid until the disputed portion(s) is resolved.

## 4.0  Term and Termination.

**4.1**    This Agreement hereunder may be terminated prior to expiration or completion in accordance with the following:

      **4.1.1**    By either party without cause on fourteen (14) days written notice.

      **4.1.2**    By either party in the event the other has failed to perform any obligation required to be performed under this Agreement and such failure is not corrected within fourteen (14) days from receipt of written notice advising of such failure from the other party.

## 5.0  Proprietary Information

During the term of the Agreement, DMP and the Client, to the extent of each Party's contractual and lawful right to do so, shall exchange such proprietary technical and other information as is reasonably required for each to perform its obligations hereunder. DMP and the Client each agree to keep in confidence and prevent the disclosure to any person(s) outside their respective organizations, or any person(s) within their organizations not having a need to know, all information received from the other which is designated in writing or by an appropriate stamp or legend to be of a proprietary nature and to use such information only in connection with their obligations under this Agreement. However, that neither party shall be liable for disclosure or use of such data if the same is:

- Already known to the recipient party.

- Or becomes publicly known through no wrongful act of the recipient party.

- Rightfully received from a third party having the right to disclose the data without similar restrictions as to disclosure and use.

- Independently developed by the recipient party.

- Knowingly furnished to the US Government or other third party by the submitting party without similar restrictions as to disclosure and use, as specified above.

- Is approved for release or use by written authorization of the submitting party.

- Data deemed proprietary by the recipient party in accordance with the above, but nevertheless marked proprietary by the submitting party, will not be disclosed by the recipient party with markings revealing the name or interest of the submitting party.

- The recipient party shall not be liable for inadvertent, accidental, unauthorized or mistaken disclosure or use by its employees, of data obtained under this Agreement, provided that the recipient party shall use the same degree of care as used to protect its own proprietary data of like importance and upon discovery of such disclosure of use, the recipient party shall endeavor to prevent further disclosure of use and shall notify the submitting party.

## 6.0 Inventions and Patents

Inventions conceived by employees of DMP shall belong exclusively to DMP. Inventions conceived by employees of Parties shall belong exclusively to the Party by whom the conceiving individual is employed.  Inventions conceived jointly by Parties hereto in the course of work called for by this Agreement shall be subject to further agreement of the Parties. This understanding is subject to further modification as may be required by applicable Government regulations, or terms of the prime contract or resultant subcontract between the Parties. Except as stated in the preceding, nothing contained in this Agreement shall be deemed, by implication, estoppels or otherwise, to grant any right or license in respect of patents, inventions, or technical information at any time owned by the other party.

## 7.0 Relationship

Nothing in this Agreement shall be deemed to constitute, create, give effect to, or otherwise recognize a joint venture, partnership or formal business entity of any kind, and the rights and obligations of the Parties shall be limited to those expressly set forth herein. Nothing herein shall be construed as providing for the sharing of profits or losses arising out of the efforts of either or all parties.

## 8.0 Publicity and News Release

All Client matters must be treated confidentially in all respects.  Media inquiries should be referred to the Client without comment.

## 9.0 Assignment

Neither this Agreement nor any interest herein may be assigned, in whole or in part, by either Party without the prior written consent of the other Parties, except that, without

securing such prior consent, either Party shall have the right to assign this Agreement to any successor of such Party by way of merger or consolidation or the acquisition of substantially all of the entire assets of such Party relating to the subject matter of this Agreement; provided, however, that such successor shall expressly assume all of the obligations of such Party under this Agreement.

**10.0 Entire Agreement**

This Agreement constitutes the entire understanding and agreement of and between the parties with respect to the subject matter hereof, and supersedes all prior representations and agreements, verbal or written. It shall not be varied, except by an instrument in writing of subsequent date, duly executed by an authorized representative of each party. Paragraph headings herein are for convenience and only shall not limit in way the scope or interpretation of any provision of this Agreement. The validity, construction, scope and performance of this Agreement shall be governed by the laws of the District of Columbia, and shall be brought in appropriate courts within the District of Columbia.

**11.0 Notices and Authorized Parties**

Any notice, consent, demand or request required or permitted by this Agreement shall be in writing, and be deemed to have been sufficiently given when personally delivered or deposited in the United States mail, postage prepaid, addressed as follows:

|  |  |
|---|---|
| If to the Client: | If to DMP: |

Erica Beardsley
8405 Greensboro Drive, Suite 100
McLean, VA 22102
Email: ebeardsl@WHTF.com

Dana P. Lucas
5600 Colorado Avenue, NW
Washington, DC 20011
dana.lucas@thedmpgroup.com

Matthew Carlson
1212 New York Ave., N.W.
Suite 1000
Washington, D.C. 20005
Email: mwc@tomnh.com

Thomas P. Gaffney
9826 Islandside Drive
Montgomery Village, MD 20886
Email: tomg941575@aol.com

The parties identified in this Section are authorized to negotiate and administer this Agreement.

**12.0 Limitation of Liability**

Neither Party shall be liable to the other Party for any indirect, incidental, special or consequential damages, however caused, whether as a consequence of the negligence of

the one Party or otherwise.

*************Signature        Page        Follows*************

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the latest date on which the final Party's signature is made below.

**For DMP:**

_____          Date: _____
Donald Lucas
Partner

— * — — * — — * — — * — — * — — * — — * — — * — — * — — * — — * —

**For the Client:**

St. Paul Mercury Insurance Company:

_____          Date: _____
Erica Beardsley

CNA Surety:

_____          Date: _____
Mathew Carlson

Vincent Gaffney:

_____          Date: _____
Vincent Gaffney

6

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the latest date on which the final Party's signature is made below.

**For DMP:**

_____          Date: _____
Dana P. Lucas
Managing Partner

— — ■ — — ■ — — ■ — — ■ — — ■ — — ■ — — ■ — — ■ — — ■ — — ■ — — ■ — — ■ —

**For the Client:**

St. Paul Mercury Insurance Company:

*Erica Beardsley*                         Date:  6/27/05
_____                _____
Erica Beardsley

Western Surety:

_____          Date: _____
Matthew Carlson

Thomas P. Gaffney:

_____          Date: _____
Thomas P. Gaffney

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the latest date on which the final Party's signature is made below.

**For DMP:**

_____     Date: _____
Dana P. Lucas
Managing Partner

**For the Client:**

St. Paul Mercury Insurance Company:

_____     Date: _____
Erica Beardsley

Western Surety:

by: _____     Date: _7/1/05_
Matthew Carlson

Thomas P. Gaffney:

_____     Date: _____
Thomas P. Gaffney

7

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the latest date on which the final Party's signature is made below.

**For DMP:**

_____    Date: _____

Dana P. Lucas
Managing Partner

— · — · — · — · — · — · — · — · — · — · — · — · — · — ·

**For the Client:**

St. Paul Mercury Insurance Company:

_____    Date: _____

Erica Beardsley

Western Surety:

_____    Date: _____

Matthew Carlson

Thomas P. Gaffney:

_____    Date: _06/27/05_____

Thomas P. Gaffney

7

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>**(EXCEPT IN U.S. PLAINTIFF CASES)** | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>**(IN U.S. PLAINTIFF CASES ONLY)**<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- 2 U.S. Government Defendant
- 3 Federal Question (U.S. Government Not a Party)
- 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| A. *Antitrust* | B. *Personal Injury/ Malpractice* | C. *Administrative Agency Review* | D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| 410 Antitrust | 310 Airplane<br>315 Airplane Product Liability<br>320 Assault, Libel & Slander<br>330 Federal Employers Liability<br>340 Marine<br>345 Marine Product Liability<br>350 Motor Vehicle<br>355 Motor Vehicle Product Liability<br>360 Other Personal Injury<br>362 Medical Malpractice<br>365 Product Liability<br>368 Asbestos Product Liability | 151 Medicare Act<br><br>**Social Security:**<br>861 HIA ((1395ff)<br>862 Black Lung (923)<br>863 DIWC/DIWW (405(g)<br>864 SSID Title XVI<br>865 RSI (405(g)<br>**Other Statutes**<br>891 Agricultural Acts<br>892 Economic Stabilization Act<br>893 Environmental Matters<br>894 Energy Allocation Act<br>890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| E. *General Civil (Other)* | OR | F. *Pro Se General Civil* | | |
|---|---|---|---|---|
| **Real Property**<br>210 Land Condemnation<br>220 Foreclosure<br>230 Rent, Lease & Ejectment<br>240 Torts to Land<br>245 Tort Product Liability<br>290 All Other Real Property<br><br>**Personal Property**<br>370 Other Fraud<br>371 Truth in Lending<br>380 Other Personal Property Damage<br>385 Property Damage Product Liability | **Bankruptcy**<br>422 Appeal 28 USC 158<br>423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>535 Death Penalty<br>540 Mandamus & Other<br>550 Civil Rights<br>555 Prison Condition<br><br>**Property Rights**<br>820 Copyrights<br>830 Patent<br>840 Trademark<br><br>**Federal Tax Suits**<br>870 Taxes (US plaintiff or defendant<br>871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>610 Agriculture<br>620 Other Food &Drug<br>625 Drug Related Seizure of Property 21 USC 881<br>630 Liquor Laws<br>640 RR & Truck<br>650 Airline Regs<br>660 Occupational Safety/Health<br>690 Other<br><br>**Other Statutes**<br>400 State Reapportionment<br>430 Banks & Banking<br>450 Commerce/ICC Rates/etc.<br>460 Deportation | 470 Racketeer Influenced & Corrupt Organizations<br>480 Consumer Credit<br>490 Cable/Satellite TV<br>810 Selective Service<br>850 Securities/Commodities/ Exchange<br>875 Customer Challenge 12 USC 3410<br>900 Appeal of fee determination under equal access to Justice<br>950 Constitutionality of State Statutes<br>890 Other Statutory Actions (if not administrative agency review or Privacy Act | |

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| 530 Habeas Corpus-General<br>510 Motion/Vacate Sentence | 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | 895 Freedom of Information Act<br>890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| 710 Fair Labor Standards Act<br>720 Labor/Mgmt. Relations<br>730 Labor/Mgmt. Reporting & Disclosure Act<br>740 Labor Railway Act<br>790 Other Labor Litigation<br>791 Empl. Ret. Inc. Security Act | 441 Voting (if not Voting Rights Act)<br>443 Housing/Accommodations<br>444 Welfare<br>440 Other Civil Rights<br>445 American w/Disabilities-Employment<br>446 Americans w/Disabilities-Other | 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholder's Suits<br>190 Other Contracts<br>195 Contract Product Liability<br>196 Franchise | 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

| 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from another district (specify) | 6 Multi district Litigation | 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES          NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instruction)          YES          NO | If yes, please complete related case form. |
|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.