# PROFESSIONAL SERVICES AGREEMENT

This Agreement is executed between The DMP Group, LLC (hereinafter referred to as "DMP") with offices located at 5600 Colorado Avenue, NW, Washington, DC 20011 and St. Paul Mercury Insurance Company, Western Surety, and Thomas P. Gaffney.  St. Paul, Western Surety, and Thomas P. Gaffney hereinafter will be referred to collectively as "the Client".  DMP and the Client hereinafter will be referred to collectively as "the Parties".

This Agreement sets forth the terms and conditions under which DMP will provide certain services to the Client.  The terms and conditions of this Agreement are effective as of June 13, 2005 and beyond until terminated by either party, and relates exclusively to the performance of services rendered in connection with the Estate of Frances Cary.

The Parties agree as follows:

### 1.0  Scope of Agreement

DMP agrees to perform accounting services as requested by the Client related to the Estate of Frances Cary.  These services include, but are not limited to, identifying and tracking receipts of the Estate of Frances Cary since inception of the Estate to present (a period of approximately 7 years).

### 2.0  Scope Limitations

DMP agrees that it shall complete all work requested by the Client on or before the deadline specified by the Client, provided such deadline provides DMP with a reasonable amount of time within which to complete the work based upon the accepted practice within the accounting industry.  Such representation does not apply in cases where matters outside of the control of DMP (i.e., the Client's failure to provide necessary information, governmental agency processing delays, etc.) prevents DMP from completing the work within the time period requested by the Client.

### 3.0 Price and Payment

**3.1**    Fees for services will be billed on an hourly basis.  The agreed upon rates for this engagement are as follows:

| | |
|---|---|
| Partner-in-Charge | $125 per hour |
| Senior Accountant | $85 per hour |

**3.2**   Unilateral rate increases will not be honored.

**3.3**   The parties will not pay for:

    a.   Preparing invoices;

    b.   Secretarial work/administrative time/word processing;

    c.   Review or Organization of the file, not to include initial review and organization    of all documents by DMP necessary for the provision of services.  DMP considers the initial review of all documents and other information contained in the pre-existing file as billable time.

    d.   Reviewing or analyzing conflicts of interest.

The Client considers the foregoing items to be a part of DMP's overhead rate which is contemplated in the hourly fee.

**3.4**   The Client will pay actual costs for expenses (without "premiums" or "markups").  All bills must contain a summary of charges for each expense totaled by category.  The Client will only reimburse:  photocopying at actual cost (not to exceed $.10/page-bills must indicate number of pages and per page rate); reasonable travel expenses including coach airfare, hotel, car rental, etc.; actual long distance telephone; outgoing faxes at actual long distance telephone usage.

The Client will not pay:  case management systems; unreasonable use of overnight services; processing third party invoices, travel time (unless work is performed en route).

**3.5**   The Client will not pay for:  duplication caused by the firm's staffing requirements; routine intra-office conferencing or memoranda.

**3.6**   A detailed budget should be delivered to the Client within 15 days of request, if required.

**3.7**   Each bill should contain the following information:

    a.   Case or matter name;

    b.   The billing period involved;

    c.   The firm's address and FEIN number;

    d.   A detailed description of each task performed in single-activity time entries, including the date it was performed and who performed it, their rate, the time expended and charged for each task (generic descriptions such as "attention to case" or "work on file" are not acceptable) and

    e.   Billing in .1 hour increments.

**3.8**  The Client may require the DMP Group to provide proof of insurance coverage under a general liability, professional errors and assignment, or some other instrument. If such is required, the DMP Group shall submit a copy of the required policy coverage naming the Client as an additional insured, where applicable.

**3.9**  DMP will invoice the Client monthly, no later than the 10th day of each month.. Payment of invoices will be made within 30 days of receipt. In the event that a portion(s) of any invoice is unacceptable or disputed by the Client, only the portion(s) in dispute will go unpaid until the disputed portion(s) is resolved.

## 4.0  Term and Termination.

**4.1**  This Agreement hereunder may be terminated prior to expiration or completion in accordance with the following:

**4.1.1**  By either party without cause on fourteen (14) days written notice.

**4.1.2**  By either party in the event the other has failed to perform any obligation required to be performed under this Agreement and such failure is not corrected within fourteen (14) days from receipt of written notice advising of such failure from the other party.

## 5.0  Proprietary Information

During the term of the Agreement, DMP and the Client, to the extent of each Party's contractual and lawful right to do so, shall exchange such proprietary technical and other information as is reasonably required for each to perform its obligations hereunder. DMP and the Client each agree to keep in confidence and prevent the disclosure to any person(s) outside their respective organizations, or any person(s) within their organizations not having a need to know, all information received from the other which is designated in writing or by an appropriate stamp or legend to be of a proprietary nature and to use such information only in connection with their obligations under this Agreement. However, that neither party shall be liable for disclosure or use of such data if the same is:

- Already known to the recipient party.

- Or becomes publicly known through no wrongful act of the recipient party.

- Rightfully received from a third party having the right to disclose the data without similar restrictions as to disclosure and use.

- Independently developed by the recipient party.

- Knowingly furnished to the US Government or other third party by the submitting party without similar restrictions as to disclosure and use, as specified above.

- Is approved for release or use by written authorization of the submitting party.

- Data deemed proprietary by the recipient party in accordance with the above, but nevertheless marked proprietary by the submitting party, will not be disclosed by the recipient party with markings revealing the name or interest of the submitting party.

- The recipient party shall not be liable for inadvertent, accidental, unauthorized or mistaken disclosure or use by its employees, of data obtained under this Agreement, provided that the recipient party shall use the same degree of care as used to protect its own proprietary data of like importance and upon discovery of such disclosure of use, the recipient party shall endeavor to prevent further disclosure of use and shall notify the submitting party.

## 6.0 Inventions and Patents

Inventions conceived by employees of DMP shall belong exclusively to DMP. Inventions conceived by employees of Parties shall belong exclusively to the Party by whom the conceiving individual is employed.   Inventions conceived jointly by Parties hereto in the course of work called for by this Agreement shall be subject to further agreement of the Parties. This understanding is subject to further modification as may be required by applicable Government regulations, or terms of the prime contract or resultant subcontract between the Parties. Except as stated in the preceding, nothing contained in this Agreement shall be deemed, by implication, estoppels or otherwise, to grant any right or license in respect of patents, inventions, or technical information at any time owned by the other party.

## 7.0 Relationship

Nothing in this Agreement shall be deemed to constitute, create, give effect to, or otherwise recognize a joint venture, partnership or formal business entity of any kind, and the rights and obligations of the Parties shall be limited to those expressly set forth herein. Nothing herein shall be construed as providing for the sharing of profits or losses arising out of the efforts of either or all parties.

## 8.0 Publicity and News Release

All Client matters must be treated confidentially in all respects.  Media inquiries should be referred to the Client without comment.

## 9.0 Assignment

Neither this Agreement nor any interest herein may be assigned, in whole or in part, by either Party without the prior written consent of the other Parties, except that, without

securing such prior consent, either Party shall have the right to assign this Agreement to any successor of such Party by way of merger or consolidation or the acquisition of substantially all of the entire assets of such Party relating to the subject matter of this Agreement; provided, however, that such successor shall expressly assume all of the obligations of such Party under this Agreement.

## 10.0 Entire Agreement

This Agreement constitutes the entire understanding and agreement of and between the parties with respect to the subject matter hereof, and supersedes all prior representations and agreements, verbal or written. It shall not be varied, except by an instrument in writing of subsequent date, duly executed by an authorized representative of each party.   Paragraph headings herein are for convenience and only shall not limit in way the scope or interpretation of any provision of this Agreement.   The validity, construction, scope and performance of this Agreement shall be governed by the laws of the District of Columbia, and shall be brought in appropriate courts within the District of Columbia.

## 11.0 Notices and Authorized Parties

Any notice, consent, demand or request required or permitted by this Agreement shall be in writing, and be deemed to have been sufficiently given when personally delivered or deposited in the United States mail, postage prepaid, addressed as follows:

If to the Client:

Erica Beardsley
8405 Greensboro Drive, Suite 100
McLean, VA  22102
Email: ebeardsl@WHTF.com

Matthew Carlson
1212 New York Ave., N.W.
Suite 1000
Washington, D.C.  20005
Email: mwc@tomnh.com

Thomas P. Gaffney
9826 Islandside Drive
Montgomery Village, MD  20886
Email: tomg941575@aol.com

If to DMP:

Dana P. Lucas
5600 Colorado Avenue, NW
Washington, DC 20011
dana.lucas@thedmpgroup.com

The parties identified in this Section are authorized to negotiate and administer this Agreement.

## 12.0 Limitation of Liability

Neither Party shall be liable to the other Party for any indirect, incidental, special or consequential damages, however caused, whether as a consequence of the negligence of

the one Party or otherwise.

\*\*\*\*\*\*\*\*\*\*\*\*\*Signature          Page          Follows\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the latest date on which the final Party's signature is made below.

**For DMP:**

Date: _June 30, 2005_

Donald Lucas
Partner

— — — — — — — — — — — — — — — — — — — — — — — — —

**For the Client:**

St. Paul Mercury Insurance Company: .

Date: _____

Erica Beardsley

CNA Surety:

Date: _____

Mathew Carlson

Vincent Gaffney:

Date: _____

Vincent Gaffney

07/07/2005 THU 12:12   [TX/RX NO 9950]   ☑002

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the latest date on which the final Party's signature is made below.

**For DMP:**

_____          Date: _____

Dana P. Lucas
Managing Partner

— ‑‑ — ‑‑ — ‑‑ — ‑‑ — ‑‑ — ‑‑ — ‑‑ — ‑‑ — ‑‑ — ‑‑ — ‑‑ — ‑‑ —

**For the Client:**

St. Paul Mercury Insurance Company:

*Erica Beardsley*          Date: 6/27/05

Erica Beardsley

Western Surety:

_____          Date: _____

Matthew Carlson

Thomas P. Gaffney:

_____          Date: _____

Thomas P. Gaffney

7

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the latest date on which the final Party's signature is made below.

**For DMP:**

_____     Date: _____
Dana P. Lucas
Managing Partner

---

**For the Client:**

St. Paul Mercury Insurance Company:

_____     Date: _____
Erica Beardsley


Western Surety:

by: _____     Date: 7/1/05
Matthew Carlson


Thomas P. Gaffney:

_____     Date: _____
Thomas P. Gaffney

7

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the latest date on which the final Party's signature is made below.

**For DMP:**

_____          Date:  _____
Dana P. Lucas
Managing Partner

— ·— — —·— — —·— — —·— — —·— — —·— — —·— — —·— — —·— — —·— — —·— — —·— —

**For the Client:**

St. Paul Mercury Insurance Company:

_____          Date:  _____
Erica Beardsley

Western Surety:

_____          Date:  _____
Matthew Carlson

Thomas P. Gaffney:

_____          Date:  _06/27/05_____
Thomas P. Gaffney

7